James Cogburn and Roy Cogburn *v.* State of Tennessee.

(*Jackson,* April Term, 1955.)

Opinion filed June 10, 1955.

432

J. B. AVERY, JR., of Alamo, for plaintiffs in error.

NAT TIPTON, Assistant Attorney General, for the State.

·MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error have appealed from a judgment of the Circuit Court based upon the verdict of a jury finding them presently insane. They in support of this appeal filed an able brief with many assignments of error to the proceeding there. They, too, through able counsel have made an oral argument. In view of the disposition that we think must be made of this case it will not be necessary for us to consider all of these assignments of error.

These parties were indicted upon a charge of homicide and prior to their arraignment the District Attorney General filed a petition averring that he had been advised by certain doctors, who had attended these plaintiffs in error during their confinement in jail, that a psychiatric

examination of them should be made. The petition of the District Attorney General was granted by the court and the plaintiffs in error committed to the Hospital for the Criminal Insane for observation and treatment. They were committed and a report made on November 26, 1954, to the effect that both of them were insane and not competent to stand trial upon the criminal charge.

When the indictment against these parties was called for trial, the District Attorney General suggested the present insanity of each of them. To this suggestion of present insanity, the plaintiffs in error through their counsel filed a plea in abatement setting forth in substance that the prosecution could not suggest the present insanity of persons charged with a crime but that the same was a personal privilege to the person so charged and that the plaintiffs in error were not pleading present insanity. This plea in abatement was overruled and the plaintiffs in error placed on trial upon the plea of present insanity and a jury after hearing the evidence of the doctors offered on behalf of the State that they were presently insane and some several witnesses offered on their behalf found that they were presently insane and not mentally capable of going to trial. It is from this verdict that the present appeal is sought.

Subsection (5) of Code Section 4459.1, Williams' Annotated Code, provides:

"When any person is under indictment charged with the commission of an offense and is suspected of being insane, the judges having criminal jurisdiction thereof shall have authority, upon petition duly filed by the district attorney general, or the attorney for the defendant, and after hearing, to commit said person to the said Thomas F. Gailor Psychiatric Hospital, or any similar institution in his district

having facilities therefor, for observation, treatment, and hospital care for a period not exceeding thirty (30) days, and the cost of maintaining said prisoner in said institution shall be added to the costs of court in said cause."

Thus we have a clear statutory authorization for the District Attorney's action herein and the trial judge's action in submitting these parties for examination. For reasons hereinafter stated we think that these parties would have had a like right and duty under the common law in the absence of a statute. Insofar as we can determine there is no statute in this State applicable to a situation as here presented other than that above quoted which is a part of the chapter and general Act providing for the commission of insane persons to the hospital. But insofar as we can determine there is nothing else in this Act or otherwise applicable to such parties in criminal prosecutions.

We are definitely of the opinion, in the absence of an applicable statute, that the investigation of the present insanity or the mental disorder of one accused of a crime when such is brought to the attention of the trial judge or the District Attorney General that it becomes their duty to make a further investigation into this matter and that such actions are controlled by the common law. Of course so much of the common law as has not been abrogated or repealed by statute is in full force and effect in this State. *Simpson* v. *Drake,* 150 Tenn. 84, 262 S. W. 41.

In a comparatively recent case on the question (1948) the Supreme Court of North Carolina in *State* v. *Sullivan,* 229 N. C. 251, 49 S. E. (2d) 458, 460, made this very appropriate statement:

"And the rule at common law is that an accused cannot be tried while insane, for the obvious reason that his insanity may render him incapable of making a rational defense, and at common law, if at any time while criminal proceedings are pending, the trial court, before or during the trial, either from observation or upon suggestion of counsel, has facts brought to its attention which raise a doubt of the then sanity of the accused, it should, before putting him upon trial or continuing his trial initiate an investigation of such by any method, generally, that seems to it best. 14 Am. Jur., 801 Criminal Law, Section 44. That is, the method that shall be ordered of determining the present sanity of the accused before the beginning of the trial generally rests in the discretion of the trial judge, with or without the aid of a jury. He may inquire into the facts himself, or he may impanel a jury for the purpose if he sees fit, or he may submit the question as an issue to the trial jury."

We think that this is the correct rule to apply in Tennessee and so adopt the quoted statement as the rule applicable in this State.

In our investigation of the matter and in reading the authorities cited by able counsel for both sides, we have found an excellent annotation in 142 A.L.R. beginning at page 961 and concluding at page 1015. This annotation gives a full and exhaustive treatment on the questions here presented. All of the cases cited by the State in its brief are analyzed or referred to in this annotation.

This note follows an earlier note in 49 A.L.R. beginning at page 807.

We in this State have in effect recognized that the Court may raise the question. This Court in *Green*

v. *State,* 1890, 88 Tenn. 634, 14 S. W. 489, held that the appellate court (this Court) might of its own motion institute such an investigation where in the absence of the plea in the trial court of present insanity of the accused the court was led to believe upon thorough investigation of the record before them that the prisoner at the time of trial was insane. Thus this Court raised the question and made a further investigation of the prisoner's present insanity.

 It seems to us that it is just as important that an accused should not be required to plead to an indictment for a crime or be tried for his life or liberty while he is insane as it is that he be not held responsible for the acts committed while he was insane. Or as said by this Court in *Jordan* v. *State,* 124 Tenn. 81, 135 S. W. 327, 329, 34 L.R.A., N. S., 1115:

"While the insanity of the defendant prevents him from being required to plead, be tried, sentenced, or punished, if existing at the time of such proceedings, yet he is not to be discharged, but kept in custody under proper orders of the court until it shall be ascertained that he has recovered from his infirmity, when the trial shall be had, judgment entered, or sentence executed."

Thus we think that the trial judge was well within his discretionary rights in granting and submitting to the jury specially impaneled for the purpose the issue of whether or not these parties were presently insane. As we read the opinion in *Firby* v. *State,* 62 Tenn. 358, it seems to us that that is what was done there. Regardless of what was done in that case the authorities seem to us to warrant and direct that such action be taken by the trial judge.

Under the facts of the instant case the judgment here is not final.

"It is a proceeding preliminary to the trial upon the guilt or innocence of the defendant, and the only effect it can have on such trial is to postpone it, in the event the issue is found for the defendant.

"It is purely a collateral issue, similar to those involved upon an application for continuance, or the qualification of a talesman when the jury is being impaneled. It is also somewhat analogous to cases where the question of the admission of evidence is presented and tried by the presiding judge, such as the competency of dying declarations and of secondary evidence of the contents of lost documents." *Jordan* v. *State*, supra.

Thus in view of this fact that the judgment is not final the State very forcibly and reasonably argues that the appeal should be dismissed for this reason. In support of this argument the State says:

"In Jordan v. State, 124 Tenn. 81 [135 S. W. 327, 34 L.R.A., N.S., 1115], it is expressly held that an appeal would not lie from a judgment against one finding him presently sane. The same rule definitely must be applicable to a judgment finding him presently insane. In McLean v. State, 1 [Tenn.] Cas. (Shannon) 474, it was held that it was no such final judgment where a plea of former conviction was interposed and denied as to permit an appeal therefrom. In State v. Bass, 153 Tenn. 162 [281 S. W. 936], it was held that an order to suppress evidence was interlocutory and not final to the extent that an appeal could be perfected therefrom. In Homolko v. State, 155 Tenn. 467 [295 S. W. 66], it was held that no appeal lay from an order entering nolle

prosequi. In State v. Vaughn, 156 Tenn. 343 [1 S. W. (2d) 527], it was held that an appeal would not lie from an order quashing an indictment and ordering it re-committed to the grand jury. In Mason v. State, 169 Tenn. 52 [82 S. W. (2d) 862], it was held that no appeal lay from an order retiring the case from the docket. In Allen v. State, 194 Tenn. 296 [250 S. W. (2d) 539], it was held no appeal lay from an order striking pleas of former jeopardy and of former suits pending, and in Helton v. State, 194 Tenn. 299 [250 S. W. (2d) 540], it was held that the writ of certiorari would not lie where the matter complained of was interlocutory and not a final judgment.''

It seems to us that these authorities are somewhat analogous to the situation here presented and that the argument of the State to strike the appeal is good and should be sustained which is accordingly done.